# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

March 20, 2013

David F. Chermol, Esq.
Chermol and Fishman LLC
11450 Bustleton Avenue
Philadelphia, PA 19116

Stephen F. Shea, Esq.
Elkind and Shea
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Alex S. Gordon, Esq.
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

      Re:  Coretta Yvonne Ingram v. Michael J. Astrue,
           Commissioner, Social Security, Civil No. SKG-11-1729

Dear Counsel,

    Claimant, Coretta Yvonne Ingram, by her attorney, David F. Chermol, filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied her claim for Supplemental Security Income ("SSI").

    Currently pending before the Court are cross motions for summary judgment, and plaintiff's request for remand in the alternative.  For the reasons that follow, the Court hereby DENIES plaintiff's motion for summary judgment, DENIES

1

defendant's motion for summary judgment, and REMANDS for
proceedings consistent with this opinion.[1]

## I.   Procedural History

Ms. Ingram filed an application for Disability Insurance
Benefits (DIB) on September December 2006, alleging that
disability began on March 31, 2006.  (R. 20).  Ms. Ingram's
claims were denied at the initial and reconsideration levels.
(Id.).  Thereafter Ms. Ingram had an administrative hearing on
March 20, 2009.  (Id.).  At the hearing, Mr. Ingram amended her
alleged disability onset to March 8, 2008. (Id.).  On May 14,
2009 the ALJ denied Ms. Ingram's claim, and on August 30, 2010,
Ms. Ingram requested the Appeals Council review the ALJ's
decision.  (R. 27).  The Appeals Council denied Ms. Ingram's
request for review on November 24, 2010 making the ALJ's opinion
the final decision of the agency.  (R. 5-6).  Ms. Ingram filed
this action on June 24, 2011 seeking review of that final
decision pursuant to 42 U.S.C. § 405(g).

---

[1] Ms. Ingram presents a long involved medical history.  The briefing by both
parties in this appeal was very good and helpful to the Court.  Some of the
issues were complicated and close.  While the court ultimately found error in
some conclusions, the ALJ opinion was likewise thorough and deserving on
review of affirmance in many aspects.

## II.  **Factual Background**

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record, hereby adopts it. (ECF No. 20-1, 2-8)

## III. **ALJ Findings**

In reviewing a claimant's eligibility for SSI an ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the Act. 20 C.F.R § 416.920(a).[2]  If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further. 20 C.F.R. § 404.1520(a)(4).  After proceeding through each of the required steps, the ALJ in this case concluded that Ms. Ingram was not disabled as defined by the Act. (R. 20).

The first step requires that claimant prove he or she is not engaged in "substantial gainful activity."[3]  20 C.F.R. §

---

[2] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).
[3] Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when she worked before.  20 C.F.R. § 416.972(b). Substantial gainful activity does not include activities such as household

416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged in "substantial gainful activity," he or she will not be considered disabled.  Id.  Here, the ALJ found that Ms. Ingram "has not engaged in substantial gainful activity since March 8, 2008, the amended alleged onset date."  (R. 22).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit her ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  In addition, there is a durational requirement that the claimant's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.

Here, the ALJ found that Ms. Ingram had the following severe impairments: obesity, depression, anxiety, lumbar radiculopathy, displacement of a cervical intervertebral disc without myelopathy, degenerative disc disease, asthma, and fibromyalgia. (R. 23).  The ALJ also determined that Ms. Ingram's knee pain, headaches, Crohn's Disease, and gastro esophageal reflux disease were not severe impairments.  (R. 26).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §

---

tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

416.920(a)(4)(iii).  If one of the Listings is met, disability will be found without consideration of age, education, or work experience.  20 C.F.R. § § 404.1520(d), 416.920(d).  The ALJ here reviewed generally sections 1.00 et seq. (musculoskeletal system disorders), 3.00 et seq. (respiratory system disorders), 11.00 et seq. (neurological system disorders), and 14.00 et seq. (immune system disorders) of the Listing of Impairments and determined that plaintiff did not meet any of the listings.  (R. 29).  The ALJ also more specifically reviewed Listings 12.04 and 12.06, which relate to mental health.  The ALJ found that Ms. Ingram did not meet either of these listings.  (R. 29-31).

Before an ALJ advances to the fourth step of the sequential analysis, she must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps.  20 C.F.R. § 404.1520(e).  RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  Social Security Ruling (SSR) 96-8p.  In formulating a claimant's RFC, the ALJ must consider even those impairments that are not "severe."  20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, ALJs evaluate the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test.  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529.  First, the ALJ must determine

whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms.  20 C.F.R. § 404.1529(b).  If the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence.  SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations.  Id.

Here, the ALJ determined that Ms. Ingram has the ability to perform sedentary work as defined in 20 C.F.R. 416.967(a), except that she can lift ten pounds occasionally, less than 10 pounds frequently, stand or walk for 2 hours in an eight hour day, sit for 6 hours in an eight hour day, occasionally climb a ramp or stairs, balance, stoop, kneel, crouch, and crawl but never climb a ladder, rope or scaffold, avoid concentrated exposure to hazards, odors, dust, fumes and pulmonary irritants, and can only

6

perform work not executed at production pace.  (R. 31).  Applying
the two-step test for evaluating subjective symptoms, the ALJ
found that Ms. Ingram's medically determinable impairments could
reasonably be expected to cause some pain, but concluded that
"the record does not document sufficient objective medical
evidence to substantiate the severity of the pain and degree of
functional limitations alleged by the claimany."  (R. 33).

At the fourth step of the sequential analysis, the ALJ must
consider whether the claimant retains the RFC necessary to
perform past relevant work.  20 C.F.R. §§ 404.1520(e),
416.920(e).  The ALJ noted that Ms. Ingram's previous work as a
legal secretary and police secretary was sedentary and skilled.
(R. 37).  Thus, the ALJ found that Ms. Ingram is unable to
perform her past relevant work.  (Id.).

Where, as here, the claimant is unable to resume her past
relevant work, the ALJ proceeds to the fifth and final step of
the sequential analysis.  This step requires consideration of
whether, in light of vocational factors such as age, education,
work experience, and RFC, the claimant is capable of other work
in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).
At this step, the burden of proof shifts to the agency to
establish that the claimant retains the RFC to engage in an
alternative job which exists in the national economy.  McLain v.
Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v.

7

Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The agency must prove both the claimant's capacity to perform the job and that the job is available.  Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show that she possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.

In this case, the ALJ found that although Ms. Ingram was unable to perform any past relevant work, based on Ms. Ingram's age, education, work experience, and RFC, Ms. Ingram could perform jobs which exist in significant numbers in the national economy.  (R. 25-26).  Based on the testimony of the vocational expert, the ALJ determined that Ms. Ingram could work in occupations such as food and beverage clerk (60,000 jobs nationally and 900 jobs locally); packer (880,000 jobs nationally and 1,400 jobs locally); and addressor (575,000 jobs nationally and 900 jobs locally).  (R. 38).  Thus, the ALJ concluded that Ms. Ingram had not been under a disability, as defined in the Act, from the alleged onset date of March 8, 2008 through the date of denial of disability services.  (Id.).

## IV.  <u>Standard of Review</u>

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try Ms. Ingram's claim de novo. <u>King v. Califano</u>, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Craig</u>, 76 F.3d at 589; <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. <u>Craig</u>, 76 F.3d at 589; <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings

are supported by substantial evidence, this Court is bound to

accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.

1962).

Despite deference to the Commissioner's findings of fact, "a

factual finding by the ALJ is not binding if it was reached by

means of an improper standard or misapplication of the law."

Coffman, 829 F.2d at 517.  The Court has authority under 42

U.S.C. § 405(g) to affirm, modify, or reverse the decision of the

agency "with or without remanding the case for a rehearing."

Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V.   Discussion

Plaintiff raised several issues on appeal. The Court shall

consider each in turn.[4]

**A. The ALJ did not Err in Finding that Ms. Ingram's Crohn's**
**Disease and Headaches Were not Severe Impairments; the ALJ**
**erred in her Determination That Ms. Ingram's Arthritic Knees**
**Were not a Severe Impairment.**

Plaintiff argues that substantial evidence does not support

the ALJ's finding that plaintiff's Crohn's disease, headaches,

and osteoarthiritis were non-severe impairments.  Specifically,

plaintiff contends that the medical evidence of record

demonstrates that these impairments, both individually and in

---

[4] In addition to the issues considered infra, plaintiff raised several issues
relating to the ALJ's formulation of claimant's RFC.  The Court orders remand
of this case on the grounds detailed infra.  As the RFC analysis on remand
will likely be substantially influenced by this ruling, it is unnecessary to
resolve any dispute as to the RFC on record.

combination, "cause more than a minimal effect on her ability to work." (ECF No. 16-1, 22).

Defendant responds first that the ALJ did not err because while plaintiff was diagnosed with Crohn's disease, there was no indication that it was severe, and the record suggests that it was controlled by medication. (ECF No. 19-2, 25).  Similarly, defendant contends that plaintiff's headaches were generally controlled by medication and therefore not severe. (Id. at 28). As to plaintiff's knee osteoarthritis, defendant claims the ALJ's finding is supported by the lack of documented treatment for the condition, and further contends that even if the condition imposed functional limitations, these limitations were accounted for in the ALJ's RFC assessment. (Id. at 29).

The severity evaluation is a de minimis "threshold screening standard to eliminate frivolous claims at an early stage in the process." Bowen v. Yuckert, 482 U.S. 137, 180 (U.S. 1987); see also Felton-Miller v. Astrue, 459 Fed. Appx. 226, 230 (4th Cir. 2011).  20 CFR 404.1521 defines a non-severe impairment as one that "does not significantly limit . . . physical or mental ability to do basic work activities."  SSR 85-28, written "[t]o clarify the policy for determining when a person's impairments may be found 'not severe'," states that an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would

have no more than a minimal effect on an individual's ability to work." SSR 85-28. Severe impairments must have lasted or be expected to last twelve months. 20 C.F.R. §§ 404.1509, 1520(a)(ii). If an ailment is controlled by medication such that it does not cause work-related limitations, the ailment is not severe. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)(noting that if a symptom can be reasonable controlled by medication or treatment it is not disabling); Bostic v. Astrue, 2012 U.S. Dist. LEXIS 94324 (S.D. W. Va. July 9, 2012)(finding impairments were non-severe when medication was prescribed to control them).

A determination that an impairment is not severe "requires a careful evaluation of the medical findings that describe the impairment" and "an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR No. 96-3p.

**1. Crohn's Disease**

In her analysis of plaintiff's Crohn's disease, the ALJ cited extensively to the record, noting that on several occasions treating doctors were unable to confirm a diagnosis of Crohn's disease through objective testing. (R. 9). In addition, the ALJ cited to a doctor's report (R. 334) that indicated that plaintiff had no significant symptoms, and in which plaintiff's treating

doctor advised her that she could probably stop taking Pentasa, a drug for the treatment of Crohn's disease.  (R. 9).  While the ALJ acknowledged an October 2007 doctor's visit in which plaintiff stated that her Crohn's disease prevented her from finding a job, the ALJ noted that the doctor was merely relating the plaintiff's unconfirmed statements.  (Id.).  After a review of the record, the ALJ found that "all of the objective evidence supports a conclusion that the claimant's Crohn's disease is not causing a significant impact on her ability to perform sustained work activities."  (R. 28).

The Court finds this conclusion to be supported by substantial evidence.  Plaintiff's central argument: that "all of the state agency consultants and medical examiners . . . found that Ms. Ingram's Crohn's disease was a severe impairment" is unsupported by the record.  (ECF No. 16-1, 23).  While several doctors stated that she had been diagnosed with the disease, and noted her stated symptoms of diarrhea and constipation, plaintiff has cited to no doctors' findings indicating that the disease was severe.

The objective medical evidence generally points to the contrary: a doctor's report in 2005 discussing plaintiff's Crohn's disease found there was "no evidence of any recurrent disease since her surgery in 2001."  (R. 289).  While a 2006 examination report noted mild distention in her abdomen, a CT

scan of the abdomen the previous year was described as unremarkable. (R. 293). In July 2007, Dr. David Beswick noted that plaintiff was "doing well regarding her Crohn's disease," and had "no significant symptoms." (R. 334). As a result, Dr. Beswick "indicated to [plaintiff] that we can probably stop her Pentasa." (R. 334). While a consultative examiner suggested in late 2007 that, based on her description, plaintiff's Crohn's disease "could be a disabling disorder," he noted that "[o]bjectively, I could not confirm these things in my office." (R. 344). Plaintiff acknowledges that she did not receive treatment for Crohn's disease from a specialist after March 8, 2008. (ECF No. 16-1, 26).

The ALJ performed a careful and detailed analysis of the medical record in evaluating plaintiff's Crohn's disease. (R. 28). The record contained several negative objective findings as to Crohn's disease, and a doctor's visit in 2007 suggested that plaintiff had no significant symptoms of the disease. The Court finds this to be substantial evidence supporting the ALJ's determination that plaintiff's Crohn's disease was not a severe impairment.

**2. Headaches**

The ALJ performed a similarly thorough analysis of the
record in regards to plaintiff's headaches.  The opinion
considers information from nine doctor's visits, and plaintiff's
testimony at the hearing, before concluding that plaintiff's
headaches were not severe.  (R. 26-27).  Specifically, the ALJ
emphasizes several places in the record where plaintiff or her
doctors indicate that her headaches were controlled by
medication.

An April 2007 doctor's report indicates that claimant's
migraine headaches are controlled.  (R. 318).  In October 2007
plaintiff stated that on Topamax her headaches had been "fairly
well-controlled" for a "number of years."  (R. 503).  Two reports
from 2008 demonstrate the contradictory nature of the record: A
July 2008 report suggests that her headaches and other pain were
controlled by Percocet, (R. 548), but an October 2008 report
indicates that Percocet and Valium were not controlling the
headaches.  (R. 545).  In December 2008, plaintiff indicated that
Topomax "helps" with headaches.  (R. 480).

While the record is not entirely clear regarding plaintiff's
headaches, the ALJ did not commit a clear error of judgment in
weighing the relevant evidence.  Sharpe v. Dir., OWCP, 495 F.3d
125, 130 (4th Cir. 2007).  Several doctors' reports note that
plaintiff's headaches were controlled, at least to some extent,
by medication.  The ALJ concluded that "the medical record as a

whole reveals that when claimant treats her headaches with
medication, the claimant's headache symptoms do not cause more
than a minimal effect on her ability to perform sustained work
related activities." (R. 27). There is substantial support for
this conclusion in the record.

### 3. Osteoarthritis of the Knees

Plaintiff was diagnosed with degenerative arthritis of both
knees on January 15, 2005. (R. 292). The doctor's report noted
that the "range of left knee motion is painful and somewhat
limited." (Id.). A July 18, 2007 report by Dr. Goodman
diagnosed crepitus in both knees, with decreased muscle strength.
(R. 333). A May 12, 2008 X-ray, conducted as a result of
plaintiff's knee pain, revealed "narrowing of bilateral
patellofemoral joints with tiny patellar spurs present." (R.
370). Finally, an August 2008 MRI, conducted due to knee pain
and "cracking," found "grade 3 chondormalacia consisting of areas
of cartilage blistering and fissuring along with subchondral cyst
consistent with developing osteoarthritis." (R. 459). Plaintiff
testified that her pain, with medication, was somewhere between a
7 and 8 out of 10. (R. 18). Plaintiff's counsel stated that she
was trying to resolve problems with her back and neck before
dealing with her knee problems.

The ALJ put significant weight on the fact that "although claimant's imaging studies reveal bilateral knee osteoarthritis she has not undergone treatment to ameliorate her pain." (R. 27). Indeed, plaintiff's failure to undertake "more advanced pain relief measures" is the only reason given for the ALJ's finding that the condition was not severe. (Id. 27-28).

The Court finds this to be an insufficient basis for the finding. Unlike the ALJ's findings regarding Crohn's disease and headaches, there is objective evidence in the record documenting plaintiff's knee problems, and no evidence in the record suggesting that these problems were controlled by medication. Both the objective findings of osteoarthritis and plaintiff's own comments regarding the relatively severe nature of the pain suggest that plaintiff's knee issues could significantly hinder her in many work related activities. Particularly in light of the de-minimis nature of the severity analysis, the Court finds that the ALJ erred in labeling plaintiff's knee osteoarthritis as non-severe. As such, the Court directs the ALJ on remand to reconsider plaintiff's limitations, including her severe knee osteoarthritis.

**B. Plaintiff's Mental Condition Does Not Meet any Listing**

Plaintiff argues that her anxiety and depression met Listing 12.04 and 12.06.  (ECF No. 16-1, 38).  Specifically, plaintiff contends (1) that the ALJ failed to provide an in depth explanation of her findings, and (2) the ALJ failed to complete a Psychiatric Review Technique Form or comply with the "special technique" dictated by the PRTF for evaluating mental impairments.  (Id. at 38-39).  In reply, defendant emphasizes the "relatively wide range of daily activities" that plaintiff could perform on a daily basis.  (Id. at 33).  In addition, defendant points to plaintiff's only "mild difficulties" in social functioning, and the lack of evidence of any episodes of decompensation, in support of the ALJ's finding that plaintiff met neither listing 12.04 or 12.06.  (ECF No. 19-2, 34-37).

To meet listing 12.04, the claimant must satisfy either both "paragraph A" and "paragraph B;" or "paragraph C" alone.  20 C.F.R. § 404, Subpart P, Appendix 1.  To meet 12.06 the claimant must satisfy both "paragraph A" and "paragraph B."  The "paragraph B" criteria in Listing 12.04 and 12.06 are the same. Id.  The ALJ here focused primarily on the paragraph B requirements in her analysis.  (R. 29).  To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following four criteria: (1) marked[5] restriction

---

[5] A marked limitation means more than moderate but less than extreme.  20 C.F.R. § 404, Subpart P, Appendix 1.

of activities of daily living[6]; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.[7]  20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ analyzed each of the above four criteria in turn. First, the ALJ found that claimant had "mild restriction" in activities of daily living.  The ALJ based this conclusion on claimant's testimony that she is married, lives with her husband, can care for personal hygiene, is able to prepare simple meals, shop for groceries, use a computer, and care for her child, including meeting her son at the school bus stop two times per a day.  (R. 30).

Second, the ALJ found that plaintiff had only mild difficulties with social functioning.  While noting that claimant testified that she wants to be "away" from people, the ALJ found that she is able to interact with her immediate family, gets along with family members and her physicians, and is able to go to public places, such as the grocery store, drug store, or doctor's office.  (R. 30).  In addition, the ALJ noted that

---

[6]Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.  20 C.F.R. § 404, Subpart P, Appendix 1.
[7] Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.  20 C.F.R. § 404, Subpart P, Appendix 1.

plaintiff, according to her January 2007 self-report, goes to church on Sundays.  (Id.).

Third, the ALJ found that plaintiff has moderate difficulties relating to concentration, persistence, and pace. (Id.).  The ALJ based this finding on plaintiff's testimony that she experiences memory and concentration problems, and writes things down to buy then forgets to look at her list.  Finally, the ALJ found that plaintiff "has experienced no episodes of decompensation, which have been of extended duration."[8]  (R. 30).

The ALJ is required to use a "special technique" in evaluating mental illness.[9]  20 CFR 404.1520a.  Under the technique, an ALJ is required to evaluate a claimant based on the extent to which his or her impairment interferes with the "ability to function independently, appropriately, effectively, and on a sustained basis."  (Id.).  In so doing, the ALJ must "consider such factors as the quality and level of your overall functional performance, any episodic limitations . . . [and] the settings in which you are able to function."  (Id.).  These factors must be considered in relation to claimant's

---

[8] The ALJ also found that there was no evidence to satisfy the C listings under 12.04 and 12.06, specifically noting that there was no evidence of repeated episodes of decompensation, or that minimal increases in mental demands would cause her to decompensate.  (R. 30).

[9] To the extent that plaintiff suggests that the ALJ should have completed a PRTF form, she misstates the law.  There is no requirement that an ALJ complete a PRTF and append it to his or her decision; this regulatory requirement has not been in effect since a regulatory change in September 2000.  20 CFR 404.1520a; Barraza v. Barnhart, 2002 U.S. Dist. LEXIS 12084 (N.D. Tex. Apr. 25, 2002).

"[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." (Id.).

The Court finds that the ALJ properly followed this technique, and her conclusion was based on substantial evidence. The ALJ considered each of the four categories listed above.  She rated the plaintiff on the required five-point scale.[10]  (Id.). Her analysis considering the claimant's ability to function effectively and the settings in which plaintiff could function. The facts highlighted in the opinion, including claimant's ability to care for herself, make and keep doctors appointments, interact with her family, and care for her child, form substantial support for the conclusion that claimant did not have sufficient limitation as to "interfere seriously with the ability to function" in these areas.  As such, the ALJ's finding that claimant did not meet listing 12.04 or 12.06 was supported by the evidence.

**C. The ALJ Erred in her Consideration of Dr. Cary's Opinion; Her Conclusion Regarding Dr. Galvis was Supported by Substantial Evidence**

   **1. Dr. Cary**

---

[10] "When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme."  20 CFR 404.1520a

Plaintiff argues that the ALJ did not give the opinions of plaintiff's treating physicians' "the deference she was required to give them." (ECF No. 16-1, 29). In support, plaintiff contends that (1) Dr. Cary's opinion is supported by the record and therefore should have been given greater weight, (2) the ALJ did not properly follow the requirements of 20 C.F.R. § 404.1527(d), and (3) the ALJ did not understand the nature of Dr. Cary's specialty in physiatry. Plaintiff argues that remand is required to give proper weight to Dr. Cary's report regarding Ms. Ingram's limitations and abilities.

In reply, defendant argues that the ALJ's decision to grant little weight to Dr. Cary's opinion was appropriate because Dr. Cary's conclusion that plaintiff had disabling physical limitations was inconsistent with both Dr. Cary's own notes and the other evidence on the record. (ECF No. 19-2, 21). In particular, defendant notes several instances in the record where plaintiff stated that her pain was controlled—at least to some extent—by medication and physical therapy. (Id.). Defendant further argues that the ALJ correctly gave little weight to Dr. Cary due to his narrow specialization and lack of more general expertise, and because he relied heavily on plaintiff's own subjective statements. (Id.).

The opinions of treating physicians are generally given a measure of deference by courts due to their "unique perspective

to the medical evidence that cannot be obtained from the objective medical findings alone." 20 CFR 404.1527(a)(2). If a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is given controlling weight. Id. "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)

Even if a treating source opinion does not merit "controlling weight," it is entitled to deference and should be weighed according to the factors promulgated by the Commissioner in the regulations. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188 (Jul. 2, 1996). The SSA has clarified that,

> [a]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling [*21] weight. SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188 (Jul. 2, 1996).

20 C.F.R. § 404.1527(d)(2) outlines the factors that an ALJ must consider when determining what weight to afford a physician who is not given controlling weight. The factors are as follows: (1) the "[l]ength of the treatment relationship and the frequency of examination[;]" (2) the "[n]ature and extent of the treatment relationship[;]" (3) the extent to which the opinion is supported by medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician; and (6) "any [other] factors . . . which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(2).  Generally, more weight is given to the opinion of a "specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." (Id.); see also Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005).

The ALJ gave "little weight" to Dr. Cary's opinion. She gave three reasons for this finding.  First, the ALJ found that Dr. Cary's "lack of expertise in vocational training and occupational health coupled with his specialty in physiatry has not provided a balanced review of claimant's limitations." (R. 36).  Second, the ALJ found Dr. Cary's conclusions to be inconsistent with the record, noting that the "totality of the medical evidence shows that the claimant is not as limited as determined by Dr. Cary."

(Id.).  Finally, the ALJ found that Dr. Cary "relied heavily on
the claimant's subjective complaints regarding her physical
impairments to guide the completion of his opinion."  (Id.).

   The Court finds that ALJ's conclusion regarding Dr. Cary's
specialty to be counter to the relevant regulations.  Physiatry
is a "branch of medicine that deals with the prevention,
diagnosis, and treatment of disease or injury, and the
rehabilitation from resultant impairments and disabilities."
Dorland's Illustrated Medical Dictionary at 1443 (32d ed. 2012).
Physiatrists are medical doctors who attend four years of medical
school, followed by a one-year internship and three years of
hospital residency with a specialization in physiatry.  The
Hospital for Special Surgery, What is Physiatry?, at
http://www.hss.edu/what-is-physiatry.asp (last visited March 18,
2012).  Physiatrists specialize in non-surgical physical medicine
and often coordinate with physical therapists, occupational
therapists, and psychologists to implement a broad based
treatment plan.  They work on a wide range of issues, but often
specialize in back or spinal injuries and other muscoskeletal
problems.  (Id.).

   It is difficult to see why Dr. Cary's medical specialty in
treating disabling conditions would weigh against his opinion
regarding the extent of Ms. Ingram's allegedly disabling
condition.  Indeed, Dr. Cary's specialty in physiatry, with a

sub-specialty in pain management, should likely enhance the weight given to his findings. As a physiatrist, he specializes in treating pain and rehabilitating patients from disabling conditions or injuries. As such, his opinions regarding claimant's pain and ability to function are squarely within his area of expertise. Because Dr. Cary was opining about "medical issues related to his . . . area of specialty," his conclusions deserve some deference.

As such, the ALJ considered Dr. Cary's opinion through the wrong lens. The ALJ should have granted Dr. Cary's opinion particular deference, rather than viewing it with mistrust. This holds particularly true here, where Dr. Cary's opinion is the only medical opinion regarding pain on record from <u>after</u> plaintiff's alleged onset date of March 8, 2008. Dr. Cary's opinion is therefore of particular importance in contrast to the opinions of non-examining physicians, who reviewed only treatment notes from before plaintiff's onset date.[11] (R. 35). The Court therefore directs the ALJ on remand to properly consider the opinion of Dr. Cary as a treating physician working within his area of specialty, and with awareness of the unique

---

[11] Dr. Palandjian, a State agency medical consultant, prepared an RFC on May 5, 2007, concluding that claimant could lift 20 pounds occasionally, 10 pounds frequently, and could stand or walk for 2 hours a day, and sit for 6 hours a day. (R. 326-331). This opinion was affirmed by Michael Borek, a State agency medical consultant, on November 13, 2007. (R. 347-351). The ALJ gave these opinions "some weight." (R. 34).

perspective he offers in comparison to earlier opinions of other doctors.

## 2. Dr. Glavis

Dr. Glavis is Ms. Ingram's treating psychiatrist. The record shows that Ms. Ingram saw Dr. Glavis in November 2008 (R. 454-56), December 2008 (R. 453), January 2009 (R. 453), and on March 19, 2009 (R. 565). Dr. Glavis filled out a mental impairment questionnaire on March 23, 2009. (R. 565-570). Dr. Glavis diagnosed major depression and panic disorder, noting a depressed mood and flat affect. (R. 565). He rated Ms. Ingram as either unable to meet competitive standards or with no useful ability to function in every work related area. (R. 567). He found that Ms. Ingram had marked or extreme functional limitations, and anticipated that her impairments would cause her to be out of work for more than four days each month. (R. 570). Dr. Glavis' overall prognosis for Ms. Ingram was fair. (R. 565).

The ALJ assigned "little weight" to Dr. Glavis' opinion. (R. 35). This conclusion was based primarily on the short period of time that Dr. Glavis had been treating claimant. The ALJ labeled Dr. Glavis' findings as "initial conclusions" that may change as treatment continues. The ALJ concluded that the "treatment has not been ongoing for a sufficient time period to find that the claimant is refractory to all treatment." (R. 36.).

Plaintiff challenges this finding by noting that she had been prescribed medication since April 2005, and had been diagnosed with depressive symptoms in 2006.  (ECF No. 16-1, 32).  Plaintiff also argues that the ALJ failed to properly consider relevant evidence such as her complaint of feeling closed in at times, suffering from chronic insomnia, and the Xanax prescription given to her to control anxiety.  (ECF No. 16-1, 35).

Defendant replies that the ALJ properly found that the short period of treatment detracts from the value of the Dr. Glavis' opinion.  The defendant notes that this is particularly true "[b]ecause medications for mental impairments must typically be taken at a particular does for several weeks or months before their effectiveness may be assessed."  (ECF No. 19-2, 23).

The Court finds that the ALJ performed an adequate analysis of Dr. Glavis' findings and her decision to grant his opinion little weight was supported by substantial evidence.  As per 20 C.F.R. § 404.1527(d)(2), the ALJ properly considered the length of the treatment and the frequency of examination in determining the weight given to Dr. Glavis.[12]  An ALJ generally has discretion to grant slight weight to a psychiatrist's opinion if the nature of their relationship with a claimant was short-term.  Morris v. Comm'r of Soc. Sec., 2012 U.S. Dist. LEXIS 149481 (W.D. Mich.

---

[12] Although plaintiff argues that plaintiff had been diagnosed with depression in the past, this does not impact the weight assigned to Dr. Glavis' personal opinions as a treating doctor.

Oct. 17, 2012)(upholding a finding that a psychiatrist was entitled to little weight due to the short term nature of the treatment relationship); <u>Susalla v. Astrue</u>, 2012 U.S. Dist. LEXIS 77728 (N.D. Ind. June 5, 2012)(upholding a decision in which the ALJ discounted a psychiatrist's opinion based on the short (9-month) treating relationship); <u>Meredith v. Comm'r of Soc. Sec.</u>, 2012 U.S. Dist. LEXIS 18404 (S.D. Ohio Feb. 14, 2012)(upholding ALJ's decision to grant little weight to a psychiatrist who met with claimant only once). As of the closing of the record here, Dr. Glavis had met with claimant on only four occasions. It may well be that a longer treatment relationship would convincingly demonstrate the value of Dr. Glavis' opinion. However, claimant was only at the beginning of a treatment regimen, at the time the ALJ was required to issue her opinion. Accordingly, the Court finds that the decision to grant Dr. Glavis' opinion little weight is based on substantial evidence. Further, the Court notes that the ALJ did not disregard the opinion entirely. Plaintiff's RFC was limited to "simple, unskilled work not performed at production pace, in part to consider her ongoing mental impairments." (R. 32). In light of the limited timeframe in which Dr. Glavis treated Ms. Ingram, and the relatively infrequent visits during this short time, the Court finds that the ALJ's decision to grant only limited weight to Dr. Glavis' opinion is supported by substantial evidence.

**D. The ALJ Must Reconsider Plaintiff's Subjective Complaints of Pain**

Plaintiff claims that the ALJ's findings regarding her credibility were both inaccurate and conclusory. (ECF No. 16-1, 36). Plaintiff alleges that no objective evidence in the record refutes her complaints of pain. In addition, plaintiff contends that there "is no evidence in the record to suggest that [plaintiff's] daily activities were indicative of an ability to work and that her pain was not disabling." (ECF No. 16-1, 36). Finally, plaintiff argues that the ALJ failed to consider the reports of her husband, son, and long-time friend in making her credibility determination. (ECF No. 16-1, 37).

Defendant responds that the ALJ properly found that claimant's complaints of pain were not credible because the record indicated that the pain was controlled by medication. (ECF No. 19-2, 16). Defendant also notes that the objective evidence in the record demonstrates that plaintiff had only slightly reduced range of motion, good motor examination, full strength in her upper and lower extremities, and walked with a normal gait. (ECF No. 19-2, 16). Finally, defendant claims that the ALJ did consider the statements of plaintiff's husband, son and friend, and found them to be consistent with her RFC and the conclusion that the claimant is not able to perform her past relevant work. (ECF No. 19-2, 19).

An ALJ's credibility analysis is a two-step process. First, the adjudicator must consider whether there are underlying medically determinable physical or mental impairments that could reasonably be expected to produce the individual's pain or other symptoms.  20 C.F.R. § 404.1529(b).  Second, if the underlying physical or mental impairments are shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities.  Id., SSR 96-7p, 1996 SSR LEXIS 4, *2.

Here, the ALJ found that "a number of claimant's severe impairments could reasonably cause some symptomatology." (R. 33).  She further found, however, that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant." (R. 33).  In particular, the ALJ found that claimant's testimony that chronic pain prevents her from working to be unconvincing.  The ALJ based this conclusion primarily on claimant's statement that her back and neck pain was 5/10 with medication. (R. 33).  The ALJ considered the Third Party Statements of claimant's husband, son and friend, and noted that they were credited to the extent they were consistent with the claimant's RFC as assigned. (R. 34).

There is substantial evidence on the record that plaintiff's back and neck pain was controlled, at least to some extent, by

medication.  The Court agrees with the ALJ's conclusion that a
pain level controlled to 5/10 with medication "corresponds with
moderate pain levels, which is consistent with simple, unskilled
work." (R. 33).  However, the Court directs the ALJ on remand to
more closely consider the plaintiff's severe knee osteoarthritis—
which plaintiff claimed caused 7 or 8/10 levels of pain even with
medication—in her assessment of plaintiff's complaints of pain.
Further, a reconsideration of Dr. Cary's opinion may, in turn,
affect an analysis of plaintiff's own complaints of pain.  As
such, the Court directs the ALJ to reconsider plaintiff's
subjective complaints of pain in line with this opinion.


## Conclusion

For the reasons set forth above, the Court finds that the
ALJ committed erred in both her analysis of plaintiff's knee
osteoarthirits and her analysis of Dr. Cary's opinion.
Accordingly, the Court DENIES plaintiff's motion for summary
judgment, DENIES defendant's motion for summary judgment, and
REMANDS to the Commissioner for further proceedings consistent
with this opinion.

Despite the informal nature of this letter, it shall
constitute an Order of the Court, and the Clerk is directed to
docket it accordingly.

Date: 3/20/13                          /s/
                          _____
                          Susan K. Gauvey
                          United States Magistrate Judge